IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ORACLE CORPORATION and<br>ORACLE AMERICA, INC.,<br><br>    Plaintiffs,<br><br>v.<br><br>OASIS RESEARCH, LLC,<br><br>    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)  C.A. No. 1:11-cv-00679-ER |

**OASIS' REPLY IN SUPPORT OF ITS MOTION TO TRANSFER VENUE TO THE EASTERN DISTRICT OF TEXAS**

Brian E. Farnan (Bar No. 4089)
FARNAN LLP
919 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 777-0300
(302) 777-0301
bfarnan@farnanlaw.com

Of Counsel:
Alan S. Kellman
Tamir Packin
Jason Berrebi
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400 (Telephone)
(212) 351-3401 (Facsimile)
akellman@desmaraisllp.com
tpackin@desmaraisllp.com
jberrebi@desmaraisllp.com

Filed: October 24, 2011

**TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT ..........................................................................................................................1

   A.   Judicial Economy Favors Transfer, Despite Oracle's Choice Of Forum. ........................1

      1.   There Is Substantial Overlap Between The Issues Pending In Texas And Those Raised In Oracle's Amended Complaint ...........................................................3

      2.   Oracle's Legal Authority Does Not Address These Circumstances, And Does Not Support Favoring Oracle's Choice Of Forum Over Judicial Economy. ..................8

   B.   The Remaining *Jumara* Factors Slightly Favor Transfer. ................................................10

III. CONCLUSION ....................................................................................................................10

## TABLE OF AUTHORITIES

**Cases**

*Boston Sci. Corp. v. Johnson & Johnson Inc.*,
  532 F. Supp. 2d 648 (D. Del. 2008) ................................................................. 9

*Brunswick Corp. v. Precor Inc.*,
  No. 00-691, 2000 WL 1876477 (D. Del. Dec. 12, 2000) .................................. 2

*Cashedge, Inc. v. Yodlee, Inc.*,
  No. 06-170, 2006 WL 2038504 (D. Del. Jul. 19, 2006) .................................... 2

*Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*,
  No. 01-119, 2001 WL 1617186 (D. Del. Nov. 28, 2001) .................................. 2

*Human Genome Scis., Inc. v. Genentech, Inc.*,
  No. 11-082, 2011 WL 2911797 (D. Del. July 18, 2011) ....................... 1, 3, 10

*Intellectual Ventures I, LLC v. CheckPoint Software Techs. Ltd.*,
  No. 10-1067, 2011 WL 2490645 (D. Del. June 22, 2011) ................................ 3

*Invitrogen Corp. v. Incyte Genomics, Inc.*,
  No. 01-692, 2002 WL 883963 (D. Del. May 1, 2002) ...................................... 9

*Jumara v. State Farm Ins. Co.*,
  55 F.3d 873 (3d Cir. 1995) .............................................................................. 2

*Mallinckrodt, Inc. v. E-Z-Em Inc.*,
  670 F. Supp. 2d 349 (D. Del. 2009) ................................................................. 8

*Medicis Pharma. Corp. v. Nycomed U.S. Inc.*,
  No. 10-1099, 2011 WL 2457598 (D. Del. June 16, 2011) ............................ 2, 3

*Nilssen v. Osram Sylvania, Inc.*,
  No. 00-695, 2001 WL 34368395 (D. Del. May 1, 2001) .................................. 9

*Oracle Corp. v. EpicRealm, Inc.*,
  No. 06-414, 2007 WL 901543 (D. Del. Mar. 26, 2007) .................................... 9

*Praxair, Inc. v. ATMI, Inc.*,
  No. 03-1158, 2004 WL 883395 (D. Del. Apr. 20, 2004) .................................. 1

*Stewart Org., Inc. v. Ricoh Corp.*,
  487 U.S. 22 (1988) .......................................................................................... 2

Defendant Oasis Research, LLC files this reply supporting its Motion to Dismiss or Transfer and responding to Oracle's Answering Brief opposing the same.

## I.     INTRODUCTION

Although Oracle attempts to frame Oasis' motion to transfer as an effort to avoid responsibility, the true issue is efficiency. In bringing this case in Delaware, Oracle imposes an additional and unnecessary burden on Oasis and on the federal judiciary. There is no need for this Court to delve into factual and legal issues that will be addressed in large part by a court in the Eastern District of Texas. And despite Oracle's arguments to the contrary, the overlap between this case and the Texas Action is substantial. It is simply unnecessary for this Court to engage in a redundant analysis of the same issues. In the interest of judicial efficiency, this case should be transferred to the Eastern District of Texas.

## II.    ARGUMENT

### A.     Judicial Economy Favors Transfer, Despite Oracle's Choice Of Forum.

Oracle essentially argues that given the parties' incorporation in Delaware, its choice of forum is dispositive of the *Jumara* analysis. (D.I. 14, Pl.'s Answering Br. at 15-16.) That is not true. As already shown in Oasis' Opening Brief, courts in this District regularly grant motions to transfer based on judicial economy *even when* the parties are incorporated in Delaware. *See, e.g.*, D.I. 10, Def.'s Br. in Supp. at 16-17; *Human Genome Scis., Inc. v. Genentech, Inc.*, No. 11-082, 2011 WL 2911797, at *11 (D. Del. July 18, 2011) ("[T]he analysis here turns on a balance between the weight due to the [plaintiff]'s choice of forum and the practical consideration of Judge Pfaelzer's experience with the Cabilly II patent and willingness to preside over these litigations. The Court concludes that, in the circumstances presented here, the latter factor should be accorded heavy, indeed decisive, weight.") (citing *Praxair, Inc. v. ATMI, Inc.*, No. 03-1158, 2004 WL 883395 (D. Del. Apr. 20, 2004)); *Brunswick Corp. v. Precor Inc.*, No. 00-691,

1

2000 WL 1876477, at *3 (D. Del. Dec. 12, 2000) (granting transfer after determining that the private interest factors slightly favor transfer and that public interest factors weigh strongly for transfer because of judicial economy, though both parties had incorporated in Delaware).

Oracle's attempt to distinguish the cases cited in Oasis' Opening brief highlights the fact-specific nature of the *Jumara* inquiry. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 883 (3d Cir. 1995) ("[S]ection 1404(a) was intended to vest district courts with broad discretion to determine, on an individualized, case-by-case basis, whether convenience and fairness considerations weigh in favor of transfer."); *see also Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988); *Cypress Semiconductor Corp. v. Integrated Circuit Sys., Inc.*, No. 01-119, 2001 WL 1617186, at *2 (D. Del. Nov. 28, 2001) ("Congress intended through § 1404 to place discretion in the district court to adjudicate motions to transfer according to an individualized, case-by-case consideration of convenience and the interests of justice."). That inquiry requires an examination of the extent of the overlap between this case and the Texas Action to determine whether and to what extent transfer would conserve judicial resources. One overlapping or, conversely, one non-overlapping issue between the cases does not resolve the inquiry.[1] Instead,

---

[1] While Oracle attempts to distinguish a number of cases based (in each case) on a single fact, an examination of all of the facts demonstrates that transfer in this case would result in ***more*** judicial efficiency than in the cases Oracle attempts to distinguish. For example, while it is true that the cases in *Medicis Pharmaceutical Corp. v. Nycomed U.S. Inc.*, No. 10-1099, 2011 WL 2457598 (D. Del. June 16, 2011), involved the same parties, Oracle fails to acknowledge that there was ***less overlap*** of substantive legal issues in *Medicis*. Indeed, the *Medicis* court granted transfer based on common questions of law and fact where the other pending litigation only involved a continuation of the patent in question. 2011 WL 2457598 at *3. Similarly, while *Cashedge, Inc. v. Yodlee, Inc.*, No. 06-170, 2006 WL 2038504 (D. Del. Jul. 19, 2006), involved the same parties, the only substantive overlap was the defendant's contention that some patents in the related litigation were prior art to the one at issue. 2006 WL 2038504 at *1. There too, the court granted transfer based on ***less overlap*** than here. The court in *Brunswick Corp. v. Precor Inc.* also granted transfer based on ***less overlap*** than in this case. There, the court granted transfer even though there was no pending, related litigation, because the transferee court

2

the Court should determine whether, given the totality of the issues pending in each court, the Eastern District of Texas "*is the more appropriate vehicle to litigate the issues between the parties.*" *Human Genome Scis.*, 2011 WL 2911797, at *11 (quoting *Praxair*, 2004 WL 883395); *see also Intellectual Ventures I, LLC v. CheckPoint Software Techs. Ltd.*, No. 10-1067, 2011 WL 2490645, at *3 (D. Del. June 22, 2011) ("Given the necessarily individualized, fact-specific, case-by-case nature of a decision whether to transfer venue, it is inevitable that the multitude of transfer options—including the many issued in this District—will not entirely harmonize with one another."). In addition, the Court should consider the possibility of judicial inconsistencies in making that decision. *See Medicis Pharma. Corp. v. Nycomed U.S. Inc.*, No. 10-1099, 2011 WL 2457598, at *1 (D. Del. June 16, 2011).

### 1. There Is Substantial Overlap Between The Issues Pending In Texas And Those Raised In Oracle's Amended Complaint.

Four of the twelve Counts contained in Oracle's Amended Complaint—those seeking to invalidate the '354, '228, '943, and '051 patents—are already pending in Texas as counterclaims.[2] One third of the claims in Oracle's Amended Complaint therefore are *identical* to those in the Texas Action. And those invalidity claims against the '354, '228, '943, and '051 patents contain overlapping factual issues with the invalidity claims against the two patents unique to this action—the '651 and '579 patents. For example, Oracle's Amended Complaint

---

had experience with a parent patent and the parties currently had another litigation pending there. 2000 WL 1876477 at *3.

[2] *See, e.g.*, Ex. H, Answer, Defenses, Countercls., and Req. for Jury Trial by AT&T Defs., at Countercl. Count I; Ex. I, Def. Nirvanix, Inc.'s Original Answer to Oasis' First Am. Compl., Affirmative Defenses and Countercls., at Countercl. Counts 5-8; Ex. J, Def. Officeware Corp. d/b/a Filesanywehere.com's Answer and Countercls. to First Am. Compl., at Countercl. for Declaratory Relief; Ex. K, Defs. Iron Mountain Inc. and Iron Mountain Information Management, Inc.'s Answer, Affirmative Defenses, and Countercls. in Resp. to Oasis Research, LLC's First Am. Compl., at Countercl. Counts 5-8; Ex. L, Answer to First Am. Compl., Affirmative Defenses, and Countercls. of Carbonite, Inc., at Countercl. Counts 5-8.

3

identifies "Compuserve" as invalidating the '354, '651, '579, '943, and '051 patents. (*See* D.I. 13 at ¶¶ 32, 88, 112, 134, 157.) The district court in Texas will become familiar with Compuserve as the Texas Action progresses, because not only is it identified in all of the patents' common specification (*see, e.g.*, '354 Patent, col. 2, l. 11), it is also specifically relied on by the Texas defendants in their invalidity contentions (*see* Ex. M). Similarly, the Texas court will become familiar with "America Online", which is relied on in Oracle's Amended Complaint as a basis for invalidating ***all six*** patents-in-suit (*see* D.I. 13 at ¶¶ 32-33, 56-59, 88-90, 112-113, 115, 134-135, 157-160) because it is identified in the patents' common specification (*see, e.g.*, '354 Patent, col. 2, l. 12).

The Texas court also soon will become familiar with other alleged prior-art references identified by Oracle in its Amended Complaint. And discovery in the Texas Action has already taken place with respect to some of those references. For example, the defendants in the Texas Action served three subpoenas for documents related to Secure Data Network, which is identified in Oracle's Amended Complaint. (*See* Ex. N, July 20, 2011 Subpoena to Frank Reed, Ex. O, July 20, 2011 Subpoena to Rimage Corporation; Ex. P, August 2, 2011 Subpoena to Susan Rydberg; *see also* D.I. 13 at ¶¶ 32, 56, 134 (identifying Secured Data Network).) The defendants in the Texas Action also served two subpoenas related to the WELL, which also is identified in Oracle's Amended Complaint. (*See* Ex. Q, July 15, 2011 Subpoena to Salon Media Group, Inc.; Ex. R, July 1, 2011 Subpoena to Mick Winter; *see also* D.I. 13 at ¶¶ 32, 56, 134 (identifying the WELL).) And the Texas defendants took the deposition of Mick Winter, the author of a manual related to the WELL, on August 25, 2011. (*See* Ex. S, Notice of Dep. of Mick Winter.)

In assessing the merits of the invalidity counterclaims in the Texas Action, that court will also need to assess the state of the prior art. In doing so, the Texas court will consider references that are relevant not only to the four patents involved in that litigation, but that are relevant to all six of the patents at issue here. As demonstrated by Oracle's Amended Complaint, Oracle seeks to have this Court review and analyze some of the very same references that are at issue in the Texas Action.

Oracle's Counts seeking declarations of non-infringement of the '354, '228 and '943 patents[3] also involve **substantial** overlap of legal issues with the Texas Action. In fact, ***all of the claim elements*** that Oracle contends it does not practice with respect to those patents include terms and phrases that are part of the claim construction process in Texas, as the table below demonstrates.

| Patent | Term Oracle Claims It Does Not Practice (terms for construction in bold) | Term/phrase proposed for construction by Texas Action defendants |
|---|---|---|
| '354 Patent | "**allowing the customer to sign up for backup services over the first online Internet session**, including the step of **establishing a customer identifier and associated password for the customer**." (D.I. 13 at ¶ 22.) | "allowing the customer to sign up for backup services over the first online Internet session" (Ex. T, Def.'s Am. Proposed Claim Terms at p. 4 (term 18).) <br><br> "establishing a customer identifier and associated password for the customer" (Ex. T, at p. 4 (term 19).) |
| '354 Patent | "conditioned at least in part on validating step (f), **allowing the customer to access the remote storage area over the second Internet session substantially as if the remote storage area was a backup storage device physically and/or locally attached** | "allowing the customer to access the remote storage area over the second Internet session substantially as if the remote storage area was a backup storage device physically and/or locally attached to the customer's |

---

[3] Oasis has not yet responded to Oracle's Amended Complaint and believes that Oracle's claims regarding the '354, '228 and '943 should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(1). But the issue of whether there is an actual case or controversy with respect to Oasis' online backup/storage patents can, and should, be resolved by the district court judge in Texas, who is already familiar with those patents. Even if this Court decides to dismiss those claims, as demonstrated above, there will still be at least one overlapping patent between the current case and the Texas Action, as well as common alleged prior-art references that apply across all six patents.

| | | |
|---|---|---|
| | to the customer's computer, including the steps of: **(1) encrypting backup data provided by the customer's computer, (2) transmitting the encrypted backup data to the online backup service provider over the second online Internet and (3) storing the backup data in the remote storage area provided by the online backup service provider.**" (D.I. 13 at ¶ 22.) | computer" (Ex. T, at p. 3 (term 10).) "encrypting backup data provided by the customer's computer" / "transmitting the encrypted backup data to the online backup service provider over the second online Internet session" / "storing the backup data in the remote storage area provided by the online backup service provider" (Ex. T, at p. 5 (term 22).) |
| '354 Patent | "a first communications handler operatively coupled to the processor, the first communications handler **establishing a first online Internet session with a customer's computer** and, in cooperation with the processor, **allowing the customer to sign up for backup services over the first online Internet session**, the first communications handler and the processor cooperating to **establish a customer identifier and associated password for the customer**" (D.I. 13 at ¶ 24.) | "establishing a first online Internet session with a customer's computer" (Ex. T, at p. 2 (term 3).) "allowing the customer to sign up for backup services over the first online Internet session" (Ex. T, at p. 4 (term 18).) "establishing a customer identifier and associated password for the customer" (Ex. T, at p. 4 (term 19).) |
| '228 Patent | "**attaching, over the Internet connection, at least a part of the online backup service provider's storage to the customer's computer as a virtual backup storage device**" (D.I. 13 at ¶ 44.) | "attaching, over the Internet connection, at least a part of the online backup service provider's storage to the customer's computer as a virtual backup storage device"(Ex. T, at p. 4, (term 12).) |
| '228 Patent | "**allowing the customer's computer to access the virtual backup storage device substantially as if the virtual backup storage device was a physical backup storage device locally attached to the customer's computer.**" (D.I. 13 at ¶ 44.) | "allowing the customer's computer to access the virtual backup storage device substantially as if the virtual backup storage device was a physical backup storage device locally attached to the customer's computer" (Ex. T, at p. 3 (Term 10).) |
| '228 Patent | "conditioned at least in part of validating step (f), **allowing the customer to access the remote storage area via the second online session substantially as if the remote storage area was a storage device physically and/or locally attached to the customer's computer, including the steps of (1) encrypting data provided by the customer's computer[, (2)] transmitting the encrypted data to the online auxiliary storage service over the second online** | "allowing the customer to access the remote storage area over the second Internet session substantially as if the remote storage area was a backup storage device physically and/or locally attached to the customer's computer" (Ex. T, at p. 3 (term 10).) "online auxiliary storage service" (Ex. T, at p. 2 (term 1).) "encrypting backup data provided by the customer's computer" / "transmitting the |

6

| | | |
|---|---|---|
| | session, (3) **storing the data in the remote storage area provided by the online auxiliary storage service**, and (4) permitting the customer's computer to access the data stored in the remote storage area by step (3)." (D.I. 13 at ¶ 46.) | encrypted backup data to the online backup service provider over the second online Internet session" / "storing the backup data in the remote storage area provided by the online backup service provider" (Ex. T, at p. 5 (term 22).) |
| '228 Patent | "a storage access controller coupled to said mass storage device and said communications handler, said storage access controller **validating**, based at least in part on said **online auxiliary storage service** relationships, **the authority of said customer** computers to access the mass storage device, said storage access controller **conditionally restricting customer computer access** to the storage provided by the mass storage device based at least in part on said validation, said storage access controller allowing authorized customer computers to store data to and read data from the mass storage device via said Internet connections." (D.I. 13 at ¶ 48.) | "validating the customer's authority" (Ex. T, at p. 4 (term 21).)<br><br>"online auxiliary storage service" (Ex. T, at p. 2 (term 1).)<br><br>"conditionally restricting at least a part of the customer's access" (Ex. T, at p. 5 (term 24).) |
| '943 Patent | "**establishing a customer relationship** between a customer having a computing device and an **online service provider** providing an **offsite data storage service accessible over the Internet for backup, restore and/or archiving**, said online service provider registering a customer identifier based at least in part on a communication between said online service provider and said customer." (D.I. 13 at ¶ 124) | "establishing a customer relationship" (Ex. T, at p. 4 (term 16).)<br><br>"online service provider" (Ex. T, at p. 3 (term 8).)<br><br>"offsite data storage service accessible over the Internet for backup, restore and/or archiving" (Ex. T, at p. 2-3 (term 6).)<br><br>"said online service provider registering a customer identifier based at least in part on a communication between said online service provider and said customer" (Ex. T, at p. 6 (term 33).) |
| '943 Patent | "a processor that (a) **makes available, to the customers' computing devices via the Internet, at least some data stored in the data storage arrangement**, (b) **validates the customers' authority** to access the online data storage system, (c) **conditionally authorizes and/or restricts access** by the customers' computing devices to the data stored in the data storage arrangement, (d) receives data sent by the customers' computing devices over the | "making available, to the customer's computing device via the Internet link, at least some data stored in the online service provider's storage" (Ex. T, at p. 3, (term 11).)<br><br>"validating the customer's authority" (Ex. T, at p. 4 ( term 21).)<br><br>"conditionally authorizing and/or restricting access["] (Ex. T, at p. 5 (term 24).)<br><br>"storing, for backup, restore and/or archival |

7

| | |
|---|---|
| Internet based on at least one of (i) an incremental backup, (ii) a full backup, and (iii) a backup based on a list of file names, and (e) **stores, for backup, restore and/or archival purposes, said received data in said data storage arrangement.**" (D.I. 13 at ¶ 126) | purposes" (Ex. T, at p. 2-3 (term 6).) |

Claim construction is a matter of law, and will require an in-depth analysis of the approximately 100-page patent specification common to all six patents-in-suit. And the construction of the same terms by different courts is not mere "speculation about the potential for inconsistent rulings" as Oracle suggests. The claim-construction process has already begun in the Texas Action. The parties have exchanged proposed terms for constructions as well as proposed definitions and extrinsic evidence pursuant to the local patent rules in that district. The parties are scheduled to submit claim construction tutorials and a joint claim construction prehearing statement to the Texas court shortly. Thus, the Texas Court will be undertaking the effort of diving into the intrinsic and extrinsic evidence over the next few months, with the *Markman* hearing set for mid-January 2012.

  2. **Oracle's Legal Authority Does Not Address These Circumstances, And Does Not Support Favoring Oracle's Choice Of Forum Over Judicial Economy.**

Several of the cases Oracle cites denying transfer have no overlapping patents between the fora. Those cases are inapposite because transfer would not result in the judicial efficiencies to be gained here. In *Mallinckrodt, Inc. v. E-Z-Em Inc.*, 670 F. Supp. 2d 349 (D. Del. 2009), the Court denied transfer because there were ***no overlapping patents***; the patents had different specifications and different priority dates. And the invalidity claims implicated not only different references because of the different priority dates, but also a potentially different field of prior art. *Mallinckrodt*, 670 F. Supp. 2d at 358. Similarly, the motions to transfer certain claims in *Discovery Communications, Inc. v. Amazon.com Inc.*, No. 09-CV-0178 (D. Del. Dec. 18,

8

2009), involved *no overlapping patents*. (*See* Ex. U, Transcript of Oral Argument at 4:2-4, *Discovery Commc'ns, Inc., v. Amazon.com Inc.*, No. 09-CV-0178 (D. Del. Dec. 18, 2009).) Here, on the other hand, four of the six patents are identical, and all six patents share the same 100-page specification.[4] Moreover, the patents not only share the same priority dates, but also implicate some of the same prior art references. *See supra* Part II.A.1.

In other cases cited by Oracle, courts denied transfer based on judicial efficiency, because they found that the stage of the co-pending litigation minimized potential judicial efficiency. For example, in *Boston Scientific Corp. v. Johnson & Johnson Inc.*, 532 F. Supp. 2d 648 (D. Del. 2008), the court denied transfer to the District of New Jersey, based in part that the *Markman* briefing in the requested transferee Court was not set to conclude for another thirteen months. 532 F. Supp. 2d at 655 n.11. Here, the *Markman* briefing is set to conclude within two months. (*See* Ex. V, First Am. Scheduling/Docket Control Order at 2.) In *Oracle Corp. v. EpicRealm, Inc.*, No. 06-414, 2007 WL 901543 (D. Del. Mar. 26, 2007), the related litigation was near completion, which in that court's judgment negated any advantage in judicial economy. 2007 WL 901543 at *5. In this case, unlike *EpicRealm*, the final pretrial trial conference in Texas is scheduled for October 2012, creating ample opportunity for judicial economy.

Finally, in *Invitrogen Corp. v. Incyte Genomics, Inc.*, No. 01-692, 2002 WL 883963 (D. Del. May 1, 2002), judicial economy gains from transfer were negated by a co-pending related case in Delaware. 2002 WL 883963 at *3. Here, the only related co-pending case is pending in the Eastern District of Texas.

---

[4] *See also Nilssen v. Osram Sylvania, Inc.*, No. 00-695, 2001 WL 34368395, at *4 (D. Del. May 1, 2001) (transferring because of significant overlap where only six of twenty-six patents were implicated).

9

### B. The Remaining *Jumara* Factors Slightly Favor Transfer.

While both parties briefly discuss the other *Jumara* factors, this decision should rest on a balance between Oracle's choice of forum and the practical consideration of judicial economy. *See Human Genome Scis.*, 2011 WL 2911797 at *11 (listing plaintiff's choice of forum and the location of operative events on one side and defendant's choice of forum and practical consideration on the other, then noting that the analysis turns on this balance).

Oracle argues that the convenience of the parties weighs in favor of keeping this action in Delaware. But Oracle provides no evidence that Delaware is more convenient for Oracle than the Eastern District of Texas. That is because Texas, not Delaware, apparently is in fact more convenient for Oracle. Indeed, the Oracle CRM On Demand service identified in Oracle's complaint is hosted by Oracle on servers located in Texas. (*See* Ex. W, Oracle CRM On Demand, *available at* http://www.oracle.com/us/products/applications/siebel/056949.pdf (last visited Oct. 24 2011) ("Oracle hosts its Oracle CRM On Demand service in its award-winning, Tier IV data center in Austin, Texas. Oracle's Austin Data Center features embassy-level security and hosts Oracle applications for more than 3.6 million Oracle On Demand end users…").)

### III. CONCLUSION

For all of the foregoing reasons, Oasis respectfully requests that the Court transfer this case to the Eastern District of Texas.

Dated: October 24, 2011                          Respectfully submitted,

                                                                  FARNAN LLP

                                                                  /s/ Brian E. Farnan
                                                                  Brian E. Farnan (Bar No. 4089)
                                                                  919 North Market Street, 12th Floor

                    Wilmington, DE  19801
                    (302) 777-0300
                    (302) 777-0301
                    bfarnan@farnanlaw.com

*Counsel for Defendant*

Of Counsel:

Alan S. Kellman
Tamir Packin
Jason Berrebi
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
(212) 351-3400 (Telephone)
(212) 351-3401 (Facsimile)
akellman@desmaraisllp.com
tpackin@desmaraisllp.com
jberrebi@desmaraisllp.com